Bowen and wife and Idley an infant, by the said Bowen her next friend *vs.* Idley.

---

Where a guardian has joint rights under a will with an infant and the latter is made a joint complainant with him and sues by such guardian as a next friend, the court will not sustain an objection taken at the hearing that such infant ought to have been made a defendant, unless it clearly appears that the suit is adverse to her interest.

If a will is destroyed in the lifetime of a testator without his knowledge, it may still be established upon satisfactory proof of its contents and destruction.

---

*July 6, 1831.*

*Parties.*
*Will destroyed.*

THE bill in this cause sought to establish a will made by one Joseph Idley, and which, it was alleged, had been cancelled or destroyed by his wife, the defendant Elizabeth Idley, without his direction, desire, consent or knowledge; and also sought to set aside an after will, upon the ground of the testator's incompetency, from a diseased state of mind.

The complainants, Ann Eliza Bowen and Mary Ann Idley were the only children of the said Joseph Idley. The defendant was his widow.

The bill set forth, amongst other things, that on or about the third day of April one thousand eight hundred and twenty-five, the said Joseph Idley, being of sound and disposing mind, memory and understanding, although feeble in body and then afflicted with a disease which subsequently became a most painful one, and being anxious to make a full, fair and equitable disposition of his estate, made and published his last will and testament, bearing date about the time last mentioned, and caused the same to be duly attested to pass real estate; by which the said Joseph Idley gave to his wife (the defendant) all his furniture and household effects, except his silver (which he gave to the said Mary Ann Idley;) and also gave to his said wife the whole income of his estate, but directed that out of the same she should, during her life, maintain and educate his daughter, the above named Mary Ann Idley; and he devised all his real estate, subject to the said devise of the income thereof, to his said two daughters to be equally divided between them on the death of his said wife; and ordered, that in case of the death of the said Mary Ann Idley before attaining her majority without issue or intestate, then the share of his estate which he had devised to her should go to the said Ann Eliza Bowen. And in and by which said will he gave to one Elizabeth Cogan a legacy of fifty dollars; and further directed, that, upon the final division of his estate between his said daughters, the sum of two thousand dollars (on account of two lots of ground given to the complainants Bowen and wife upon their marriage) should be deducted from the share of his said daughter Ann Eliza, and should be added to the share of his said daughter Mary Ann, or did in and by the said will give some other direction in relation to the said final division of his estate between his said daughters whereby they should, upon the death of his wife, have an equal share thereof (except the silver, which was to go solely to the said Mary Ann) either by a payment of momey to the said Mary Ann by the said George Bowen and his wife or by her receiving a larger proportion of the estate than

should be received by the said George Bowen and his wife or in some other way. The bill further stated, that the above mentioned will was made by the said Joseph Idley after full communication to his wife and the said George Bowen and his wife of his intention to make his will in the way it was then made and after consulting with them on the subject, the said Mary Ann not being communicated with by her said father in consequence of her extreme youth and inability to comprehend such matters; that the said wife of the said Joseph Idley and the said George Bowen and his said wife expressed themselves entirely satisfied with the said intentions of the said Joseph Idley, and that his will was made and executed in conformity with those intentions so communicated by him to his family and with the full approbation of all of his said family who were competent to judge of the matter, so far as the said complainant then knew or had reason to believe; that shortly after the making of the above mentioned will, the disease with which the said Joseph Idley had been afflicted became much more painful than it had been previous to and at the time of making the said will; and that at the time of making the pretended will subsequently mentioned, the health of the said Joseph Idley was so much impaired and his corporeal pain and distress was so great as entirely to unfit him for business and rendered him unable to give any sort of attention to any matters of moment; that the above named Elizabeth Idley, his wife, from the time of his making the above mentioned will or shortly thereafter to the time of his death or nearly so, took great pains to exclude not only the said George Bowen and his wife from the presence of the said Joseph Idley but also most of his friends and acquaintance, to the end, as the complainants stated they believed, that he might feel himself dependent solely upon her for assistance and care during his illness and she acquire, (as the complainants charged the fact to be that she did) unbounded influence over him; and that the said Elizabeth Idley, after the making of the above mentioned will, became very unfriendly to the complainants, Bowen and wife, and determined, as they stated they believed, not only to prevent them from receiving any part or share of the estate

of the said Joseph Idley, but also to appropriate to herself the whole income of the said estate during her lifetime and without any obligation upon her to support or educate the said Mary Ann Idley; that, for the purpose of more effectually accomplishing her said determination the said Elizabeth Idley did apply to one of the most intimate friends of the said Joseph Idley and falsely informed him that the said George Bowen had procured the said Joseph Idley to make a will, whereby he, the said George Bowen and his wife were to receive the bulk of the estate of the said Joseph Idley upon his death and by which, of course, great injustice would be done to her the said Elizabeth Idley and to the said Mary Ann Idley, and requested him, the said friend, to procure a lawyer to draw a will which should do justice to all parties; that the said friend, believing the said false representations of the said defendant to be true, did, accordingly interest himself to procure a new will to be drawn; and that he saw the said Joseph Idley in the presence of the said Elizabeth Idley, and had or attempted to have some conversation with him on the subject on the third day of May, 1825, or a day or two previously thereto; that the said Joseph Idley then was in such a state of health and distress of body, owing to his disease, as to render him incompetent to give proper attention to the subject of the said conversation, but that, reposing full confidence in the friend with whom the said conversation or attempted conversation was held, he the said Joseph Idley told the said friend that if his said will was not right he wished him to have it made right; that the said friend of the said Joseph Idley did thereupon call upon a gentleman of the law and requested him to draw a will for the said Joseph Idley; that the said gentleman shortly thereafter, either on the same day or the day thereafter, called on the said Joseph Idley; and the complainants had be eninformed and believed that a paper writing, purporting to be the will of the said Joseph Idley, was then drawn and witnessed by three witnesses, by which said paper writing the income of the whole estate was given to the said Elizabeth Idley during her life, without any provision being made for the maintenance or education of the said Mary Ann Idley during the life of the said

Elizabeth Idley and without any provision for or bequest to the said Ann Eliza Bowen; that the said will of the said Joseph Idley made by him on the third day of April, 1825, was then or sometime thereafter cancelled or destroyed by the said Elizabeth Idley or by her direction or procurement, and without the direction, desire, consent or knowledge of the said Joseph Idley; that at the time of the making of the pretended will of the said Joseph Idley, which was made in the month of May aforesaid, his situation rendered him incompetent to make a valid will, and, in fact, he did not and could not know the true intent and meaning of any paper or instrument in writing which he might then have signed; that the said Joseph Idley, at the time of the execution of the said pretended will, had not power of mind to know and comprehend its contents and effect, and did not know its contents and effect, and that the same was not executed of his own motion and free will, but by the suggestion and contrivance of the said Elizabeth Idley; that the complainants were advised and respectfully insisted that the making of the said pretended will and the cancelling of the said will of the third day of April, 1825, were altogether unknown to them the complainants until after the decease of the said Joseph Idley and until the said Elizabeth Idley his widow had caused the said will to be proved before the surrogate of the city and county of New York and had taken out letters testamentary thereupon; and that under and by pretence of the said pretended will of the said Joseph Idley the said Elizabeth Idley had possessed herself of the whole estate of which the said Joseph Idley was seized and possessed, &c. &c.

The bill prayed for an account and discovery; that, by a decree the said pretended will of May, 1825, might be declared to be null and void; that the complainants might have the benefit of the will of the said Joseph Idley made by him on or about the third day of April, 1825, and the latter be declared to be and be established as the last will and testament of the said Joseph Idley; and, for general relief.

In the answer of the defendant, she stated, that on the fourteenth day of September one thousand eight hundred and twenty-one the then wife of the said Joseph Idley died; and

that on the sixth day of April one thousand eight hundred and twenty-three the said Joseph Idley was married to the defendant; that during the winter and spring of the year one thousand eight hundred and twenty-five, according to the defendant's best recollection and belief, the said Joseph Idley was confined to his house with a sickness which terminated his life ; that the said George Bowen frequently, during the last aforesaid period and during the sickness of the said Joseph Idley, called at his house, and on several occasions manifested great concern to the defendant respecting the temporal affairs of the said Joseph Idley and the said George Bowen then and there once observed . to the defendant, they ought to be immediately attended to, that the said Joseph Idley ought to make his will without delay, and on one of those occasions the said George Bowen asked of the defendant to request the said Joseph to appoint him one of the executors, observing, at the same time, to the defendant, that she ought to be appointed an executrix and he executor; that the defendant accordingly mentioned the subject to the said Joseph Idley and suggested to him whether it would not be well to appoint the said George Bowen one of his executors, to which the said Joseph Idley replied, " it will never " do," and in other words expressed himself entirely disinclined to appoint the said George Bowen one of his executors; that sometime in the month of March one thousand eight hundred and twenty-five a professional gentleman was procured, at the request of the said Joseph Idley, to draw his will ; and the said Joseph Idley, with the assistance of the said professional gentleman, did make and publish a will and also cause the same to be attested in the presence of three witnesses in such manner as to pass real estate, by which said will the said Joseph Idley gave a legacy of fifty dollars to one Elizabeth Cogan, and gave to the defendant the use and benefit of all the residue of his estate, both real and personal, during her life, and at her death the whole thereof to the said Mary Ann Idley ; that the said George Bowen was not present at the making of the said will and it was not intended by the said Joseph Idley that he should know its contents until after the testator's death, as the defendant stated the said testator expressed himself to her, but that

20

the said George Bowen obtained a knowledge of the contents
of the said will soon after the making thereof, namely, within
a very few days and came to the house of the said Joseph
Idley and stated, in substance, he was dissatisfied with the will
of the said Joseph Idley as then made, and thought another
should be executed making a further provision for the defendant
and his wife, and that he solicited the defendant to apply to the
said Joseph Idley to make a new will; that the defendant being
willing that a further provision should be made in favor of the
said George Bowen and his said wife and desirous to preserve
peace in the family, requested the said Joseph Idley·to make a
new will, and with some further provision for the said George
Bowen and his wife ; that the said Joseph Idley, with reluc-
tance and after some persuasion by the defendant, consented
to make a new will, in order to make a further provision for
the said George Bowen and his wife, but that the said Joseph
Idley never expressed to the defendant the precise nor any
amount he intended to advance the said George Bowen and
his wife by his intended new will; that the defendant made
known to the said George Bowen the consent of the said Joseph
Idley to make a new will for the aforesaid purpose ; that the
said George Bowen on or about the third day of April one
thousand eight hundred and twenty-five procured a gentleman
of the law and brought him to the house of the said Joseph
Idley at about ten o'clock in the evening who drew a new will
for him in the presence of the defendant and the said Ann
Eliza Bowen; that the said will was drawn at much greater
length than the previous or subsequent one ; that the said gen-
tleman charged the said Joseph Idley. but two dollars for
drawing it, but George Bowen subsequently admitted to the
defendant that he paid the said gentleman of the law ten dollars
for drawing the same ; that by the said will, according to the
defendant's best recollection and belief, she was to receive all
the estate real and personal of the said Joseph Idley during
her natural life, except his silver plate which was given to the
said Mary Ann Idley to be delivered to her on her arriving at
the age of twenty-one years, and after the death of the de-
fendant all the real estate was to be equally divided between

the said Ann Eliza Bowen and the said Mary Ann Idley, and by the said will a charge of two thousand dollars was made upon two lots of ground conveyed (theretofore) by the said Joseph Idley and his then wife to the said George Bowen and his wife in favor of the said Mary Ann Idley; that it was the strong impression of the defendant there was no provision in the last mentioned will for the defendant to support the said Mary Ann Idley; that the defendant thinks it was provided, in case of the death of the said Mary Ann Idley before attaining the age of twenty-one years without lawful issue, that the share of the said estate devised to her should go to the said Ann Eliza Bowen; that the said Joseph Idley never communicated to the defendant an intention to make his will in the manner last aforesaid, on the contrary he often expressed his intention in the strongest terms before, and several times during his last sickness, and after the defendant, at the said instance of the said George Bowen, entreated him to do otherwise, to give to the said George Bowen and Ann Eliza his wife no more than the two lots of ground previously given them; that the defendant believed, that if the said Joseph Idley ever communicated such intentions to the said George Bowen and his wife or either of them, it was to appease the discontent of the said George Bowen, and that his, the said Idley's last days might be more peaceful and not from any intention he ever had of giving the said George Bowen and his wife the amount specified in the will of the third of April one thousand eight hundred and twenty-five; that the defendant was always well satisfied with the intentions of the said Joseph Idley in relation to the disposition of his worldly estate, but she denied that the aforesaid will was drawn conformably with those intentions—on the contrary, the gentleman who drew it did so, as she believed, influenced in a great measure by information and instruction received from the said Bowen, it being rather tedious and troublesome for the said gentleman to obtain the same fully from the said Joseph Idley; that the defendant believed the said gentleman, to a very material extent, mistook the intentions of the said Joseph Idley in relation thereto; that the disease with which the said Joseph Idley had been afflicted

did not, in the opinion or belief of the defendant, shortly after the making of the last aforesaid will, become more painful than it had been previously to and at the time of making it; that at the time of making his last will charged in the said bill as a pretended one, and even previous, during all the time the defendant lived with them and for some time after until the day of his death, he was of *sound and disposing* mind and memory and as competent to direct the making of his will as at any period when the defendant lived with him. The defendant denied taking more pains to exclude company from the said Joseph Idley than the state of his health required, or used any means whatever to gain an undue or improper influence over him or pursued any course of conduct towards him other than what she was bound as a faithful wife to do towards a sick husband; that the said Ann Eliza Bowen was in the house of the said Joseph Idley constantly day and night for nearly a fortnight during his last sickness and had as free access to him as the defendant; that it never entered the mind of the defendant to exclude other persons from him for the purpose of exercising any influence over him in relation to his will; she admitted she became unfriendly to the said George Bowen after the making of the aforesaid will, and one of her reasons for it was her firm belief and opinion, that he had used very improper means to procure the execution of said will. She denied she ever determined to prevent the said George Bowen and his wife from receiving any share or to appropriate to herself the whole income of the said estate during her lifetime without any obligation upon her to support or educate the said Mary Ann Idley; and also denied forming any determination on the subject, except the determination to abide by the will of the said Joseph Idley, whatever it might be. Defendant further said, that about two or three weeks after the last mentioned will was executed a conversation took place between her and the said Joseph Idley, in which she told him, she thought the aforesaid will was not drawn according to his intention in this particular, namely, that by the said will there was no certainty that the said Mary Ann Idley would become the owner of the house in which he then resided (and in which the defendant

then resided) after defendant's death; that the said Joseph Idley had often and uniformly expressed to her his intention that the said Mary Ann Idley should have the said house and lot after the deaths of himself and the defendant; that upon the above mentioned observation being made, the testator requested her to get and bring to him the said will, and upon her compliance he opened and carefully read the same, and thereupon expressed strong indignation against the said George Bowen, saying, that he should never have another cent of his property; that the said Joseph Idley remarked, that the charge of the sum of two thousand dollars on the two lots which he had conveyed to the said George Bowen and his wife was altogether nugatory and void, and, he believed, intended as an imposition upon him; that the said will was an imposition on him altogether, and he requested the defendant to forbid the said George Bowen coming any more to his the said Idley's house, which the defendant entreated to be excused doing; that the said Joseph Idley, at the same time, requested the said defendant to burn the said will, but she entreated to have the signature and seal torn off and preserve the will, to which the said Joseph Idley replied, " No, he must see it burn or he could " not die in peace," or words of such import, and she did, under the direction and in the sight of the said Joseph Idley, burn and destroy the said will; that the said Joseph Idley then requested the said defendant to apply to one of his intimate friends and request him to procure a lawyer to draw a will conformably to the said Joseph Idley's intentions; that the defendant did so, and according to the best of her recollection and belief, stated to the said friend the facts in her answer set forth in relation to the said will. The defendant denied knowingly or intentionally making any false representations to the said friend as in the said bill charged; that the said friend did procure a gentleman of the law to draw his will, and the said friend and gentleman of the law attended at the house of the said Joseph Idley on the third day of May one thousand eight hundred and twenty-five at an early hour in the day; that the said Joseph Idley, being of sound and disposing mind and memory and perfectly conscious of what he was doing, although

feeble in body, then directed and caused his will to be drawn and executed with due solemnity so as to pass real estate ; and that it was witnessed by the said gentleman of the law, the said friend of the said Joseph Idley and one other person, &c. &c.   The defendant also insisted in her said answer, that the said Joseph Idley had then power of mind well to know and comprehend its contents and effect, and did well know and comprehend them, and executed it of his own motion and free will and not by the suggestion or contrivance of the defendant. She admitted that the making of the said last will and the burning and destroying of the will of April immediately preceding were unknown to the said George Bowen and his wife until after the death of the said Joseph Idley and also until after the defendant had caused the said will of the third of May to be proved before the surrogate and she had taken out letters testamentary ; that the said Joseph Idley intended the said occurrences should remain unknown to the said George Bowen to secure himself from all further entreaty and importunity ; that the said Joseph Idley was much dissatisfied that the contents of his will were divulged before his death.   She admitted remaining in possession of the real estate, &c. &c.

A mass of testimony had been taken in the cause, but as there appeared to be no doubt upon the mind of the court as to the propriety of granting an issue, and the motive for reporting this case in its present stage is to give the opinion of the Vice-Chancellor upon other points, it will not be necessary to detail it.

Mr. *David S. Jones* for the complainants.

Mr. *Charles O'Connor* and Mr. *David B. Ogden* for the defendant.

We object to the way in which the infant Mary Ann Idley is brought before the court.   She ought to have been made a, defendant and have appeared by a guardian.   Under the present will, the infant is entitled to the whole of the property, subject to the mere life estate of the defendant, whereas the

paper destroyed would have given her only half and have allowed the rest to Bowen and wife who are the very persons making the infant a party complainant with them. If the infant had been made a defendant, her rights could have been protected. She might then have set up the present will. This court will not deprive the infant of such right. Bowen, by thus being her next friend, is trying to deprive her of half the estate. Infants are under the especial protection of a court of equity. The duty of a *prochein ami* is to take care of the rights of the infant; and not to place the child in a situation in which he expects to get half the matter in dispute.

Mr. *D. S. Jones.*

The counsel opposed to me, in raising this objection, seem to attempt to protect and act for the infant complainant rather than uphold the cause of their own client, the defendant. The child will suffer no loss even though Mr. Bowen should not protect her interests. The court will compel a *prochein ami* to act rightly at any time; and when the infant comes of age, she will be entitled to her action against him for any dereliction of duty. This court can order a reference to a master in order to ascertain whether a suit is beneficial to an infant: but nothing of the kind has been applied for here, and the present is too late a stage in which the point now raised should be sanctioned.

THE VICE-CHANCELLOR. The bill in this cause is filed by *September 5.* George Bowen and Ann Eliza his wife and by Mary Ann Idley, an infant, by George Bowen her next friend—Ann Eliza Bowen and Mary Ann Idley are sisters and the only children of Joseph Idley deceased. The defendant is the widow of Joseph Idley and the step-mother of the two complainants. One object of the bill is to set aside an instrument purporting to be the last will of the deceased, and made shortly before his death, upon the ground of fraud by the defendant in procuring it, added to the incompetency of the decedent. It bears date the third day of May one thousand eight hundred and twenty-

*In the margin:* 1831. BOWEN *v.* IDLEY.

five. Another object of the bill is, to reinstate and establish a former will made on the third day of April one thousand eight hundred and twenty-five, for the purpose of allowing the complainants to have the benefit of it as the last will of the testator Joseph Idley: such will, as they allege, having been made when the deceased was of sound mind and fully competent, and cancelled or destroyed by the defendant or by her direction or through her procurement without the direction, desire, consent or knowledge of the testator.

There is no doubt about the necessity and propriety of an issue of *devisavit vel non*, as regards the paper of the third day of May one thousand eight hundred and twenty-five propounded as a will: unless the objection taken by the counsel for the defendant, to the further prosecution of this suit in its present form, should prevail.

The objection is, that Mary Ann Idley, the infant, ought to have been a defendant to the suit, because, as is said, her interest is in opposition to that of the other complainants: she being entitled under the will, which is sought to be set aside, to the whole estate in remainder after the death of the defendant, her step-mother (to whom it is there devised for life) whereas, if the will of the third of April is established, the infant will be entitled to one half of the estate in remainder—and because, if both wills are entirely put out of view, she will then come in for only a share of the estate. In other words, that it is her interest to sustain the will of the third day of May one thousand eight hundred and twenty-five, and that in seeking to set it aside, they act adversely to her and ought to have made her a defendant. Another point is added: that the court is bound, whenever the suggestion is made, to look to the rights of an infant and arrest the further progress of a suit commenced by a *prochein ami*, if it appear not to be for the benefit of the infant. There can be no question as to the duty and power of the court on the latter point. Numerous instances are to be found where the court has interfered and instituted an inquiry, by a reference, in order to ascertain whether a suit is for the benefit of an infant; and, as occasion required, the court has changed a guardian and the position of the infant in order

to have its rights better protected : *Cooper's Eq.* 28 ; *Plunket* v. *Joyce*, 2 *Sch. & L.* 158 ; *Garr* v. *Drake*, 2 *J. C. R.* 542 ; *Fulton* v. *Roosevelt*, 1 *Paige's C. R.* 178. It is not a little surprising, if there be any solid foundation for this objection, that it has not been made in an earlier stage of the suit ; and I must say, it would have come with much more propriety before the cause was at issue or, at any rate, before the parties had incurred the trouble and expense of the voluminous testimony which appears in the case.

But I am by no means satisfied the interest of the infant lies that way. It is true she will be entitled under the will, if it be established, to the whole of the estate in remainder: still, until the death of her step-mother, which possibly may not be in many years, she is not legally entitled to one farthing's benefit from the estate : in the other event, she will be entitled to a present estate and to the benefit of an immediate ample support which may be far more important to her, not only in a pecuniary but in a moral point of view, than a long deferred expectancy.

In *Plunket* v. *Joyce, supra,* it was quite apparent that the interest of the infant heir on whom the real estate descended was opposed to the marriage settlement sought to be carried into execution against him in behalf of younger children, and with whom he was made a co-plaintiff. This it was which made it necessary for him to be placed in an adverse attitude to them ; and more especially as the trustee in the settlement was the only defendant, and his rights were in subserviency of those claimed by the younger children. Not so, however, in the present case. Here, the cause is at issue, not merely as respects the rights of the infant but as between her co-plaintiffs, Bowen and wife, and the defendant in relation to the validity of the will—a question in which they as well as the infant are personally interested adversely to each other ; and it is immaterial to the correct determination of the question, whether the infant is before the court as one of the complainants or as a defendant. Independent of her, here are parties before the court fully able to litigate the matter with all the advantages which the law and the evidence, brought to bear on either side, will afford ; and it certainly can have no influence upon the matter

21

of fact to be tried, on which side the infant stands. She is incapable in law of compromitting her own rights; while the act of her guardian in placing her in the position of a complainant before the court, will not determine what those rights are.

It is more a matter of form, so far as the validity of the will is concerned, that the infant is before the court. Its validity is to be settled by a jury as well as before this tribunal without regard to the situation in which she stands. The counsel for the defendants will be at liberty to urge in argument, as they have done here, that the interest of the infant requires the establishment of the will. Besides, the guardian will be responsible to the infant, when the latter comes of age, for every breach or omission of duty, whether the same arises in using her name improperly and for the purpose of serving his own purposes or by not protecting and guarding her rights.

I cannot permit the objection to prevail. There must be an issue to try the question whether the instrument of the third day of May one thousand eight hundred and twenty-five is or is not a valid will?

If this question is decided in favor of the defendant, there is, at once, an end of the cause. But, should the jury find it not to be a valid will, the question then recurs as to the will of the third day of April and whether that shall be established?

There is no doubt of the fact of the making of such a will; nor is the competency of the testator to make a will at that time disputed: although the defendant does allege, that the complainant Bowen procured this will to be made by fraud and by an imposition practised upon the testator. The preponderance of testimony, however, is strongly against the truth of the allegation.

The great and perhaps only real question in regard to that will is, as to its revocation. It was actually destroyed in the lifetime of the testator and sometime between the third of April and the same day of May—probably on or about the first day of May. The bill charges it to have been destroyed by the defendant, without the direction, consent or knowledge of the testator. This she positively denies; and in her answer relates the particular manner in which it was destroyed (by burning)

under the direction and by the particular desire of the testator, as well as in his sight. I see no direct evidence contradicting this portion of her answer, which is responsive to the bill. It may, however, be, that the testator was, at the time, as equally incompetent to revoke as to make a will. If so, the burning of the paper will not be a revocation, because it cannot be considered as done *animo revocandi.* The presumption of law, however, is, that it was destroyed *animo revocandi :* for the law does not presume fraud; and the burthen of proof is upon the complainants.

There is no difficulty, if that will should be found not duly revoked, of establishing it by a decree of this court. Its contents are proved by the testimony of the gentleman who drew it and witnessed the execution of it by the testator. In *Trevelyan* v. *Trevelyan*, 1 *Phil.* 153, Sir John Nicholl said, " there " can be no doubt in law that if a will duly executed is destroy- " ed in the lifetime of the testator, without his authority, it may " be established upon satisfactory proof being given of its having " been so destroyed, also of its contents." There, the learned judge pronounced in favor of and established a will from the deposition of a witness as to its contents.

I shall, therefore, direct, that the issue to be made up embrace the subject matter of the will of the third day of April, both as to its execution and revocation, as well as the alleged will of the third day of May one thousand eight hundred and twenty-five.

Upon the return of the verdict, I shall have the whole case before me in order to establish the one will or the other or pronounce in favor of an intestacy.

*N. B.* The appeal which the defendant took to the above decision was not decided by his honor the Chancellor directly upon the grounds taken before the Vice-Chancellor. It turned upon the appellant's having no right to appeal from an order which did not injure her. The following is a copy of the Chancellor's opinion : " The only serious objection urged against " the decision of the Vice-Chancellor in this case is, that the in- " fant should have been a defendant instead of a joint complai-

"nant. Without expressing any opinion upon the correctness " of the Vice-Chancellor's decision on that point, I am satisfied " it did not furnish any grounds for an appeal by the defendant " in her own name. No one can appeal from an order who is " not injured thereby: *Steele* v. *White*, 2 *Paige's C.R.* 478. The " decree or order of the Vice-Chancellor, so far as it affects the " rights of the appellant, is affirmed with costs; and so far as " the appeal seeks to protect the right of the infant, it must be " dismissed, but without prejudice to the right of any person to " apply to the Vice-Chancellor in behalf of the infant to inquire " whether it is for the interest of the infant to have the suit pro- " secuted in her name."

An appeal from the chancellor's order is pending in the court of errors.